And will you call the next case? 3-14-09-13, in re Estate of Chase McHenry v. Lori McHenry, and relieved by Susan Dawson Tibbetts. Excuse me, Ms. Tibbetts, but before you start your time, I'd like to just offer the record. Appellant's attorney did not appear today for whatever reason, and I think there's been a conversation between the appellant's attorney and the clerk's office. But the case is scheduled, here we are, and time to proceed. And I think we should mention, he requested via the clerk a continuance to a new date or a later date, and it was scheduled for today at this time, and the appellee is present and ready for argument. So we've decided to go ahead. Clerk, we've denied the request for a continuance of oral argument. Yeah, that's correct. May it please the court. I did want to address that point right off the bat. I mean, we have been litigating this case since June or July of 2013, and I strongly believe my client deserves to have some closure, and Chase McHenry deserves to have closure. Well, argue away, and we'll get some closure one way or the other. My name is Susan Dawson Tibbetts. I have the honor of representing Lori McHenry, the mother of Chase McHenry. Chase McHenry turned 19 years old in 2013, and we filed a petition for guardianship so that his mother could obtain school records and be able to meet with the doctors and other things that she would not have been able to do without a guardianship. There were various skirmishes back and forth, but the case went to trial in front of Judge Scott Schor on September 3rd of 2014. There were three days of trial, three entire days of trial, and in those three days of trial, the parties presented approximately 13 witnesses, if I recall. Judge Schor decided that Lori McHenry was the appropriate parent to have guardianship of Chase McHenry. Mr. Ryan, on behalf of his client, Dan McHenry, filed this appeal, and I'm going to briefly respond to his arguments that he made in his brief as to why he believes that ruling by Judge Schor should be overruled. He argues that the appropriate standard of review on appeal is the manifest weight of the evidence standard. I strongly disagree. The Probate Act in Section 11A.12.D. of the guardianship section clearly states that the selection of the guardian should be in the discretion of the court. And in fact, Judge Schor made a point at the very beginning, before any testimony or witnesses' testimony was taken, he wanted to make sure that all counsel were on the same page as to the standard that he was going to apply. And we all agreed, including the judge, that that statute said what it said, that the selection of the guardian shall be in the discretion. There was no dispute over whether Chase needed a guardian. Chase is a young man on the autism spectrum. It was very clear to everybody, and the proper physician's reports were submitted documenting that he did have a disability that mandated the appointment of a guardian for him. So the only question at trial was which parent would become the guardian. Now, the standard of an abuse of discretion, courts have held that an abuse of discretion occurs where no reasonable person would take the view adopted by the trial court. Now, that's a very, very high standard. Other courts have said an abuse of discretion would be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or whether the judge acted without the employment of conscientious judgment. And in determining whether there's an abuse of discretion, this court cannot substitute its judgment and say this is what we think should have happened, nor can it even determine whether the trial court's discretion was exercised wisely. So even if this court had read all the testimony and thought that a different conclusion was warranted from the testimony, that does not even warrant a reversal by this court, unless you find that no reasonable person would have decided the case as Judge Schor did. Now, you have the advantage of reading the transcript of the judge's ruling. He took an hour and 40 minutes to summarize the testimony that he considered to be important. He stated at the very beginning that he was guided by the law. He stated that he was a very obsessive judge in the sense of wanting to review all the evidence, which he had done before we started the summation. He said he had lots of evidence in this case to predicate a decision on, because after all, there were three days of testimony with 11 witnesses. There was no arbitrariness here. There was no fanciful judgment or a judgment without conscientious thought. To the contrary, Judge Schor, by his oral summation, showed that he strongly considered each case to be impartial, impartial, impartial, and impartial. He did not discuss each piece of evidence, each witness. He did not discuss each witness or each piece of evidence, but he certainly considered them. And in his summation, he spoke about the pieces that he felt were more important. So what did come out in the testimony? It came out that we had a mother who had been involved in Chase's life since that little boy was diagnosed with autism, with being on the autism spectrum at approximately the age of 10. She, at one point when he was that age, believed that he was having seizures. The pediatrician pooh-poohed that idea. She took it upon herself to find a doctor in Lake County, Illinois, that dealt with kids on the autism spectrum that had epilepsy disorders. She, on her own initiative, took him up there, had him examined. He found that, yes, Chase was having seizures, put him on medication, and by the time he was diagnosed, he was on medication. By 2000, he was seizure-free. She fought with the school district in Peoria to have a one-on-one aid in the school itself to be with Chase. She learned and became trained in a method called the applied behavioral analysis, which starts with the very basics for children with autism disorders, such as how to sit in a chair. Because if that child cannot sit in a chair quietly, he or she is not going to be able to benefit at school. She was the one who learned about that method and who trained not only the one-on-one aids that she had coming into her home but coming into the school. She trained the teachers of Chase's educational process in that method. She worked with them so that they would both be using the same kind of disciplinary measures with him and the same kind of praise that he would get. She had Chase evaluated by national experts. She actually formed a group, a parent support group, in Peoria for parents with children on the autism spectrum. This woman did everything humanly possible to foster the independence of this child. At the time of trial, he was 19. He was working in a supportive living facility for elderly and disabled persons, basically working in the dining area. This was competitive employment. It was not any kind of supported employment or volunteer work or make work. Competitive employment with non-disabled peers and natural supports is what Lori McHenry has said. She had a goal for her son. Contrasted to that was the father. They did live in Florida. Ms. McHenry did leave Florida to come back to Illinois to live in the same community where her parents were. But until Chase was a high school student, he showed no interest in his autism disorder. They had vacations and visitation and things like that. I'm not in any way saying that Dan McHenry does not love Chase. But in terms, when you contrast that with all of the almost superhuman things that Lori McHenry did for Chase, of which even the experts were saying these were extraordinary efforts. The guardian ad litem agreed. The judge agreed. The father didn't participate in any IEP. Which is individual educational program sessions, except for one when Chase was little. He did start attending those by conference call when Chase was in high school. And his testimony and that of his expert witness at the trial were all when he was asked about what kind of plans do you have for Chase. Well, his response was, I've assembled a team of experts and we have a plan that we can put into place a plan. Okay? Lori McHenry was living that plan. From the day that child was diagnosed, she was looking for every possible educational advantage for him. In high school, she was looking for every possible vocational advantage for him. And the judge weighed those three days of trial. While Dan McHenry may very well disagree and think that he should have been chosen as the guardian, you cannot say that that was an arbitrary decision by Judge Schor or that no reasonable person would have come to the same conclusion. A few words about his other argument. Mr. McHenry, through his attorney, has accused Judge Schor of being biased against him. Now, under the laws put forth by the Illinois Supreme Court, he has the burden of proving judicial bias. His reason for alleging bias is because after the trial was all over and Judge Schor was actually retiring and did retire, there was an article in the Peoria Journal Star, and this was Mr. Ryan attached this as an attachment to his brief, that Judge Schor had been accused of being biased against him. And that was the reason for his retirement, whereby Judge Schor and the new judge coming in to take his place were being feted at a dinner. And the article mentioned that Judge Schor had had a severely disabled child who died. Judge Schor did not disclose this to us, and therein lies Mr. Ryan's claim of prejudice, of bias, that he did not have. I will point out that Mr. Ryan misspoke in his brief where he took that article and said this shows that Judge Schor had a disabled daughter who died at home. And those words at home were never listed in the Peoria Journal Star article. He attached an affidavit of some unknown people to his reply brief, I believe it was a judge in the legal community that Judge Schor had a disabled daughter who died at home. But without stating any names, you know, who told him this or anything like that. And for Mr. Ryan didn't know about this, I didn't know about this, Judge Schor, I agree, did not disclose this. However... Was he obligated to disclose this? Okay. Is a judge who sits in divorce court obligated to say, I am divorced and I have three children and my ex-husband and I went through a contested custody case? No. Is a judge who sits in traffic court obliged to say, well, hey, I got three traffic tickets in the last year? You know, does that show bias? I don't think so. There's all sorts of personal situations. And I quote a judge who says, I have three traffic tickets in the last year. And I quoted from a case, People v. Ty, not because it has any precedential value, but because it said so much more eloquently than I could about the personal, the things that go into forming any human being. Okay? And certainly judges are human beings and that all of the things in their life have impacted on them one way or the other. And that you cannot say that just because this person had this experience in their life that they're prejudiced. And that, you know, I won't belabor that anymore because I can't remember the exact quote, but I just thought it was such an eloquent statement saying that. That judges, you know, the most that judges can be expected to do is to recognize that they may be biased and to put that aside and decide the case that is before them as best they can. And if they don't think they can be objective, then they're obligated to recuse themselves. Okay? So I'm willing to answer any questions you might have. Hearing none. Thank you. And you objected to continuing to another date. I did. I did. And because, well, I don't want to make any... You've got a fine to represent too. And so, all right. Well, thank you, Ms. Austin-Tibbitts. This matter will be taken under advisement. A written disposition will be issued. Thank you. And I believe we'll be in a brief recess. We're for a panel change before the next case.